Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, #140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Donald Rathbun*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Rathbun,<br><br>       Plaintiff,<br><br>  v.<br><br>Dell, Inc. Comprehensive Welfare Benefits Plan; Dell, Inc. Long Term Disability Plan; Dell, Inc.; Aetna Life Insurance Company,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Donald Rathbun (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

### *Jurisdiction*

1.      Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.     Plaintiff is a resident of Maricopa County, Arizona.

3.     Upon information and belief, Defendant Dell, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and administered an Employee Welfare Benefit Plan within the meaning of 29 U.S.C. §1002(1) which was self-insured and short term disability (hereinafter referred to as "STD") benefits were paid from the regular pay cycle. Upon information and belief, the name of the entity is the Dell, Inc. Comprehensive Welfare Benefits Plan (hereinafter referred to as the "Plan") which was created to provide the Company's employees with welfare benefits.

The Plan may have been comprised in part by an entity known as the Dell, Inc. Long Term Disability Plan which included a fully insured group Long Term Disability policy (hereinafter referred to as "LTD Policy") that was underwritten by Aetna Life Insurance Company (hereinafter referred to as "Aetna") and issued to the Company and/or the Plan.

Upon information and belief, the Plan states the STD benefits are paid through the regular pay cycle, at 100% of the insured's daily benefits eligible earnings for 30 days after his or her elimination period and at 60% of the insured's daily benefits eligible earnings up to a maximum of 180 days, less the elimination period.

4.     Upon information and belief, the Company or Plan may have delegated responsibility for the Plan and/or claim administration to Aetna . Plaintiff believes that as it relates to his STD and LTD claims, Aetna functioned as the Plan and/or Claim Administrator.  However, pursuant to the relevant ERISA regulation, the Company and/or

1  Plan may not have made a proper delegation or properly vested fiduciary authority or

2  discretionary power for claim administration in Aetna.

3      5.      Upon information and belief, the Company, Plan and/or Aetna may have also

4  operated under a structural conflict of interest in that they may have operated in dual roles as

5  the claims administrator and payor of benefits; *to wit*, if one of the aforementioned entities

6  approved Plaintiff's STD and/or LTD claim it was also liable for payment of benefits. [1]

7      6.      The Company or Plan's conflict of interest may have also led it to retain a

8  company such as Aetna to be the plan/claims administrator in that the Company or Plan

9  funded the aforementioned STD benefits as well as paid premiums for the LTD Policy and

10  would directly benefit financially if Aetna administered the Plan's claims, both STD and

11  LTD, in a parsimonious manner.   Aetna's conflict of interest manifested in that if it

12  maintained a parsimonious approach to managing the Plan's claims it would benefit by

13  being viewed favorably by the Company or the Plan who would save money by incurring a

14  lower claims experience with fewer monetary contributions to pay the Plan's STD benefits

15  and a lower premium on the LTD Policy.

16      7.      Aetna's conflict of interest may have also manifested because in addition to

17  being the plan/claims administrator (decision maker) on Plaintiff's STD claim, Aetna fully

18  insured and was the decision maker in Plaintiff's LTD claim which was filed pursuant to

19  Aetna's LTD Policy it issued to the Company.

20

21  [1] In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir.

22  2008) the court held, "In Bruch, the Supreme Court instructed us to "weigh[ ]" a fiduciary's "conflict of interest" as "a 'facto[r] in determining whether there is an abuse of

23  discretion.' " 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). *MetLife labors under such a conflict of interest: It both decides who gets benefits*

24  *and pays for them, so it has a direct financial incentive to deny claims.* See Langbein, supra, at 1321 ("The danger pervades the ERISA-plan world that a self-interested plan

25  decision maker will take advantage of its license under Bruch to line its own pockets by denying meritorious claims.")(emphasis added).

26

8.      In its role of insuring and administering the LTD Policy, Aetna labored under a conflict of interest in Plaintiff's STD claim since it was the decision maker in the STD claim and if it found Plaintiff was disabled throughout the STD time period and he exhausted those benefits, Plaintiff would have been eligible for benefits pursuant to the Aetna LTD Policy. [2]

9.      Aetna's conflict of interest manifested in that if it determined Plaintiff was disabled pursuant to its LTD Policy, it would have been potentially liable to Plaintiff for an extended period of time and owed him a significant amount of money.

10.     Upon information and belief, in denying Plaintiff's STD claim, Aetna's conflict manifested in that its STD denial precluded Plaintiff from being eligible for LTD benefits and as a result of that denial, Aetna saved a significant amount of money.

11.     The Company, the Plan and Aetna conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### Venue

12.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### Nature of the Complaint

13.     Incident to his employment, Plaintiff was a covered employee pursuant to the relevant Plan and LTD Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the relevant Plan and LTD Policy pursuant to

---

[2] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

§502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to from Defendants as a result of being found disabled; including but not limited to, the waiver of any premiums due on a life insurance policy, company provided health insurance benefits (coverage) and company provided pension or 401k contributions. At the present time, Plaintiff is not aware of other potential employee benefits he may be entitled to in the event he is found disabled as a result of this action.

14.     After working for the Company as a loyal employee, Plaintiff became disabled due to serious medical conditions and unable to work in his designated occupation as a Computer Systems Hardware Analyst on or about March 17, 2011.  Plaintiff has remained disabled as that term is defined in the relevant STD Plan and LTD Policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

15.     Following his disability, Plaintiff applied for STD benefits under the relevant STD Plan which provides the following definition of disability:

> Disability or Disabled shall mean the inability to perform your occupation due to an illness or injury.  Your Disability must be substantiated by significant objective finding(s) which are defined as signs which are noted on medical examination or test and which are considered significant anatomical, physiological, or psychological abnormalities which can be observed apart from the symptoms.

16.     In support of his claim for STD benefits, Plaintiff submitted medical records to Aetna from his treating physicians which supported his allegation he met the STD Plan's relevant definition of disability and Plaintiff's claim for STD benefits was approved.

17.     Aetna informed Plaintiff in a letter dated May 27, 2011, that it was terminating his STD benefits beyond June 5, 2011, after paying Plaintiff those benefits for approximately three and a half months (or 99 days).  Aetna's decision was arbitrary and an

abuse of discretion for numerous reasons including the fact there was no evidence that Plaintiff's condition had improved in any meaningful way from the time Aetna initially approved his claim to the time it terminated benefits.

18.     Plaintiff timely appealed Aetna's decision to terminate his STD benefits on or about August 3, 2012 and in support of his claim, he submitted to Aetna medical, vocational and lay witness evidence demonstrating he met the definition of disability set forth in the relevant STD Plan.

19.     Further supporting his appeal, Plaintiff submitted to Aetna an August 31, 2012 Medical Source Statement, an October 8, 2012 Checklist Questionnaire and an October 4, 2012 narrative letter authored by his board certified family physician who opined, "Given the severity of [Plaintiff's] chronic medical conditions, and, the unlikelihood that he will improve it is reasonable to assume that he will be unable to sustain any gainful employment now or in the future."

20.     Plaintiff also submitted to Aetna another evaluation and report by a qualified medical professional dated September 14, 2012 who interviewed Plaintiff, performed extensive testing and determined after an evaluation of Plaintiff's serious medical conditions that, "There is no question that [Plaintiff] meets Aetna's criteria for disability."

21.     Also supporting his appeal, Plaintiff submitted a vocational report from a certified vocational expert dated October 18, 2012.   After interviewing Plaintiff and reviewing the relevant evidence in the claim, the vocational expert concluded, "…from a vocational standpoint it is evident that [Plaintiff] will not be returning to gainful employment. As well, he fully meets the strict criteria put forth by Aetna and that he is totally incapable of performing the material duties of his past employment and at this time in any employment that may exist."

22.     In addition to the medical records and reports submitted to Aetna, Plaintiff submitted two (2) sworn affidavits from family members who confirmed Plaintiff is unable to work in any occupation and that his condition had not improved in any way since his date of disability.

23.     During the administrative review of Plaintiff's claim, he applied for, was found disabled and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

24.     After attending a hearing and reviewing evidence, an independent federal Administrative Law Judge found that Plaintiff became disabled from engaging in *any gainful occupation* which may have existed in the national economy as of April 1, 2011. Plaintiff submitted to Aetna a copy of the judge's February 25, 2011 Notice of Decision – Fully Favorable, as well as his April 7, 2011 Notice of Award of benefits from SSA.

25.     The SSA's definition of disability is significantly stricter and harder to meet than the definition of disability in the STD Plan and upon information and belief, the definition of disability in the LTD Policy for the first 24 months. Therefore, SSA's approval is relevant evidence for this Court to consider with regard to the lawfulness and reasonableness of Aetna's decision to deny Plaintiff's STD and LTD claims. In its review of Plaintiff's STD claim, Aetna referenced SSA's approval but arbitrarily failed to compare or contrast the reasons SSA approved his claim and why the evidence in Plaintiff's STD claim was not sufficient to meet the Plan's definition.

26.     As part of its review of Plaintiff's claim for STD benefits, Aetna obtained medical records only "paper reviews" from two (2) of its own medical consultants, Stuart Rubin, M.D. and Elana Mendelssohn, Psy.D.   Upon information and belief, Plaintiff believes Drs. Rubin and Mendelssohn are long time consultants for Aetna who may have

incentives to protect their own consulting relationship(s) with Aetna by providing paper reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim in order to provide opinions and reports which are favorable to Aetna and which supported the denial of Plaintiff's claim.

27.     Plaintiff questions the independence, impartiality and bias of Drs. Rubin and Mendelssohn to fully and fairly review his claim and he believes their opinions are adversarial to Plaintiff's claim given their business relationship with Aetna.

28.     On October 26, 2012, during the time Aetna was reviewing Plaintiff's claim, Plaintiff requested a complete copy of any and all reports authored by any medical consultant retained by Aetna to complete a review of his claim file.  Prior to its final denial in Plaintiff's STD claim, Aetna never disclosed Drs. Rubin and Mendelssohn or their reports to Plaintiff and never engaged Plaintiff in a dialogue so he could respond to the reports in order to perfect his claim and cure any alleged deficiencies.

29.     Aetna informed Plaintiff in a letter dated December 28, 2012 it had made a final decision to deny his claim for continued STD benefits and that he had exhausted his administrative remedies pursuant to ERISA.

30.     Upon information and belief, Aetna's December 28, 2012 denial letter confirms it failed to provide a full and fair review pursuant to ERISA because it completely failed to credit, reference, consider, and/or selectively reviewed and de-emphasized most, if not all of Plaintiff's reliable evidence.

31.     From the time Aetna originally evaluated and approved Plaintiff's claim for STD disability benefits through the date of filing this Complaint, Plaintiff's medical conditions have not improved and he has been unable to engage in any occupation.

32.     Upon information and belief, Aetna denied Plaintiff a lawful, full and fair review in his STD claim pursuant to ERISA for various reasons including but not limited to: failing to provide the relevant plan documents and evidence after many requests as required by ERISA which prejudiced Plaintiff in perfecting his claim, arbitrarily rejecting Plaintiff's reliable evidence including the fact he was found disabled by SSA, failing to consider all the evidence submitted by Plaintiff and/or de-emphasizing the medical evidence supporting Plaintiff's claim and emphasizing evidence which suggested an opposite conclusion, failing to have Plaintiff's claim reviewed by medical professionals who are truly independent, disregarding Plaintiff's self-reported symptoms, failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the combination of those diagnoses and impairments, failing to obtain an Independent Medical Examination when the STD Plan and LTD Policy allowed for one and Plaintiff's disabling medical conditions could not be reasonably or fully evaluated by reviewing only his medical records and failing to consider the side effects from Plaintiff's medications and the effect they would have on his ability to work in his occupation.

33.     As referenced, Defendants violated ERISA and denied Plaintiff of a lawful, full and fair review due to the fact that Aetna failed to provide Plaintiff with a complete copy of the relevant Plan documents and his STD claim file, even though Plaintiff requested these documents in writing on at least five (5) different occasions.

34.     On March 12, 2013, *74 days <u>after</u> Aetna rendered its final denial in Plaintiff's STD claim and 285 days <u>after</u> Plaintiff's first request*, Aetna provided a complete copy of Plaintiff's claim file and the relevant plan documents.  Pursuant to ERISA, Defendants are subject to statutory penalties for their failure to provide the requested information in a timely

matter pursuant to 29 U.S.C. § 1132(c)(1)(B).   Plaintiff seeks the aforementioned ERISA statutory penalties in this action.

35.   Due to the fact that Plaintiff was not provided with a complete copy of the relevant plan documents and evidence in his STD claim file, he was denied an opportunity to adequately develop and perfect his claim and as a result of Defendants' ERISA violations, he was materially prejudiced.

36.   Aetna's failure to provide this requested information resulted in an inadequate investigation of his STD claim as well as its refusal to consider his LTD claim and was a failure to engage Plaintiff and/or his attorney in a dialogue during the appeal with regard to what evidence was necessary so Plaintiff could perfect his appeal and claim.  Aetna's failure to adequately investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to assist in perfecting the claim is a violation of ERISA and Ninth Circuit case law and a reason he did not receive a full and fair review.

37.   Aetna has notified Plaintiff he has exhausted his administrative appeals as it relates to his STD claim.

38.   As referenced, Plaintiff submitted to Aetna a completed LTD Application on October 15, 2012.

39.   In letters dated June 26, 2013 and July 25 2013, Aetna informed Plaintiff he was not eligible to file a claim for LTD benefits until his all of his STD benefits had been approved and exhausted.  Plaintiff's LTD claim is ripe and appropriate for this Court to consider given the fact that but for Aetna's arbitrary and erroneous termination of his STD claim and benefits, he would be receiving LTD benefits as well as other potential employee benefits.  Plaintiff's LTD claim is also ripe for consideration by this Court because the evidence in the STD and LTD claims is similar, the definition of disability in the STD plan

1    and the Aetna LTD Policy are essentially identical for the first 24 months of benefits in the

2    LTD claim and Aetna is the decision maker in both claims.   Therefore, given Aetna's

3    termination of Plaintiff's STD benefits and refusal to consider his LTD application, it is

4    administratively futile for Plaintiff to seek review of his LTD claim by Aetna.

5         40.    In evaluating Plaintiff's STD claim on appeal and his LTD claim, Aetna had

6    an obligation pursuant to ERISA to administer it "solely in his best interests and other

7    participants" which it failed to do. [3]

8         41.    Plaintiff believes one reason Aetna provided an unlawful review which was

9    neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to

10   its aforementioned conflicts of interest.   Plaintiff believes Aetna's conflict of interest

11   manifested in the fact that if it found he was eligible for all of his STD benefits and

12   exhausted them, Aetna would then be liable to pay him LTD benefits for many years

13   pursuant to the LTD Policy it insured and issued to the Company.  Due to its conflict of

14   interest, when Aetna denied Plaintiff's STD claim and refused to consider his LTD claim,

15   Aetna saved a significant sum of money in Plaintiff's LTD claim.

16        42.    Plaintiff is entitled to discovery regarding the aforementioned conflicts of

17   interest and any individual or company who was involved in and/or reviewed Plaintiff's

18   claim and the Court may properly weigh and consider evidence regarding the nature, extent

19

20   _____

21   [3] ERISA sets a special standard of care upon a plan Aetna, namely, that Aetna "discharge
     [its] duties" in respect to discretionary claims processing "solely in the interests of the
22   participants and beneficiaries" of the plan.   *See* 29 U.S.C. § 1104(a)(1). ERISA
     simultaneously underscores the particular importance of accurate claims processing by
23   insisting that Aetna's "provide a 'full and fair review' of claim denials." *See Firestone*,
     489 U.S. at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting 29 U.S.C. § 1133(2)).  ERISA
24   also supplements marketplace and regulatory controls with judicial review of individual
     claim denials. *See* 29 U.S.C. § 1132(a)(1)(B); and, *Metro. Life Ins. Co. v. Glenn*, 128 S.
     Ct. 2343, 2350 (2008).

25

26

1   and effect of *any* conflict of interest which may have impacted or influenced the decision

2   to terminate his STD benefits and its refusal to consider his LTD claim.

3       43.    With regard to whether Plaintiff meets the definition of disability set forth in

4   the STD Plan and LTD Policy, the Court should review the evidence in Plaintiff's claims *de*

5   *novo* because even if the Court concludes the Plan properly confers discretion to Aetna, its

6   unlawful violations of ERISA committed during the review of Plaintiff's STD and refusal to

7   consider his LTD claim as referenced herein are so flagrant they justify *de novo* review.

8       44.    As a direct result of Aetna's decision to deny Plaintiff's STD claim, he has

9   been injured and suffered damages in the form of lost STD and LTD benefits, in addition to

10   other potential employee benefits he may have been entitled to receive through or from the

11   Plans and/or Company as a result of being found disabled; including but not limited to,

12   health insurance benefits or coverage, retirement and/or pension benefits, a life insurance

13   policy and/or coverage and a waiver of the life insurance premium on that policy in the

14   event Plaintiff became disabled.

15       45.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,

16   prejudgment interest, reasonable attorney's fees and costs from Defendants.

17       46.    Plaintiff is entitled to prejudgment interest at the rate of 10% per annum

18   pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for

19   losses he incurred as a result of Defendants' nonpayment of benefits.

20       WHEREFORE, Plaintiff prays for judgment as follows:

21       A.    For an Order finding that Plaintiff meets the definition of disability set forth

22   in the STD Plan and requiring Defendants to pay Plaintiff the remaining STD benefits

23   that are owed as well as any other employee benefits he may be entitled to as a result of

24   being found disabled pursuant to the STD Plan from the date he was first denied those

25

26

benefits and prejudgment interest thereon;

B.      For an Order that Plaintiff is entitled to file an LTD claim and that he meets the relevant definition of disability in the LTD Policy and is entitled to those benefits through the date of judgment and prejudgment interest thereon;

C.      For an Order that as a result of Plaintiff exhausting his STD benefits and meeting the definition of disability in the STD Plan and the LTD Policy, he is eligible to receive any other employee benefits from the Defendants that he is entitled to through the date of judgment and prejudgment interest thereon;

D.      For an Order requiring Defendants to continue paying Plaintiff the aforementioned disability and employee benefits until such a time as he no longer meets the Plan and/or LTD Policy's requirements to receive those benefits;

E.      For an Order requiring Defendants to pay the maximum statutory penalties pursuant to ERISA, 29 U.S.C. § 1132(c)(1)(B), for their failure to provide Plaintiff with the relevant plan documents and evidence in his claim file in a timely manner;

F.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

G.      For such other and further relief as the Court deems just and proper.

DATED this 25th day of November, 2013.

SCOTT E. DAVIS. P.C.

By:    /s/ Scott E. Davis
            Scott E. Davis
            Attorney for Plaintiff